

The relief described hereinbelow is SO ORDERED.

Signed July 02, 2015.

_____
Ronald B. King
Chief United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOHN LESLIE ARGUBRIGHT, | § | CASE NO. 13-60488-RBK |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |
| JAMES STUDENSKY, TRUSTEE OF | § | |
| THE BANKRUPTCY ESTATE OF | § | |
| JOHN LESLIE ARGUBRIGHT, | § | |
| | § | |
| PLAINTIFF, | § | |
| V. | § | ADVERSARY NO. 15-6001-RBK |
| | § | |
| BUTTERY COMPANY, LLP, | § | |
| | § | |
| DEFENDANT. | § | |

**OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The issue before the Court is whether Texas Property Code section 52.042 takes away a judgment lienholder's secured status in a bankruptcy case, following the debtor's discharge under the Bankruptcy Code. The Court concludes that it does not.

On April 7, 2015, the Court conducted a hearing on Plaintiff's Motion for Summary Judgment to determine the validity of Defendant's judgment lien under state law and Defendant's status as a secured creditor in the bankruptcy case. For the reasons set forth below, the Court denies summary judgment for Plaintiff.

"[D]eterminations of the validity, extent, or priority of liens" are core proceedings. 28 U.S.C. § 157(b)(2)(K) (2012). The Court therefore has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.

## I. Factual Background

John Argubright ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 29, 2013. On the same day, the United States trustee appointed James Studensky as Chapter 7 trustee (the "Trustee") in the case.

In his schedules, Debtor listed two pieces of real property in Hill County: (1) his homestead in Whitney, Texas, valued at $205,950.00, and (2) an 8.884-acre vacant lot, also in Whitney, Texas, valued at $20,000.00. Debtor claimed his homestead as exempt under state law, but did not exempt the vacant lot. Also in his schedules, Debtor listed Defendant-Creditor Buttery Company, LLP ("Buttery Company") as a creditor holding an unsecured nonpriority claim of $4,187.00.

Debtor's § 341 meeting was held on August 7, 2013. On October 11, 2013, the Court entered Debtor's discharge order. On January 17, 2014, the Court provided notice that April 15, 2014 was the deadline for filing proofs of claim.

On January 31, 2014, Buttery Company filed a secured proof of claim for $4,187.54. With its proof of claim, Buttery Company attached a copy of a judgment, signed December 8, 2011, for recovery of $4,187.54 against Debtor, as well as a copy of its abstract of judgment,

2

filed January 4, 2012, with the County Clerk of Hill County, Texas. The Trustee did not file an objection to Buttery Company's proof of claim.

On October 29, 2014, pursuant to 11 U.S.C. § 363, the Trustee filed a motion to sell the nonexempt 8.884-acre piece of real property, free and clear of liens and interests, for $17,000.00. In the motion, the Trustee asserted that Buttery Company's judgment lien was void and unenforceable.

On December 3, 2014, the Trustee filed a lawsuit in state court for a declaratory judgment that Buttery Company's judgment was void and its judgment lien was canceled under Texas Property Code section 52.042 because Debtor received a discharge in the bankruptcy case.

On January 5, 2015, Buttery Company filed a Notice of Removal, and thereby initiated this adversary proceeding. The Trustee then filed a Motion to Remand on February 3, 2015, which this Court denied. On February 24, 2015, the Trustee filed a Motion for Summary Judgment, which this Court considered by hearing on April 7, 2015.[1]

**II.    Discussion**

It may appear that, under Texas Property Code section 52.042, a creditor's judgment lien simply disappears upon the debtor's discharge, and if the creditor had not recovered on the value secured by the judgment lien prior to discharge, the creditor becomes an unsecured creditor in the bankruptcy case. The Court finds the Texas Legislature never intended that section 52.042 yield such a result, and allowing such a result would frustrate the purpose and process of the Bankruptcy Code.

---

[1] In this adversary proceeding, the Trustee also argues that Buttery Company's abstract of judgment is materially defective under Texas Property Code section 52.003; however, this opinion addresses only the issue presented for summary judgment—whether Buttery Company's judgment lien is canceled under Texas Property Code section 52.042 and Buttery Company is left as an unsecured creditor in the bankruptcy case.

### A. Legal Standard

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056 (incorporating FED. R. CIV. P. 56). Here, only a matter of law is before the Court, and no material facts are in dispute.

### B. Legislative History of Texas Property Code Sections 52.042-.043[2]

In 1975, the Texas Legislature amended Title 90 of the Revised Civil Statutes of Texas by adding Article 5449(a), titled "Discharge of judgments and judgment liens against bankrupts." Article 5449(a), Section 1, provided:

> At any time after one year has elapsed since a bankrupt or debtor has been discharged from his debts . . . pursuant to the acts of Congress relating to bankruptcy, the bankrupt or debtor . . . may apply, upon proof of the discharge of the bankrupt or debtor, to the court in which a judgment was rendered against the bankrupt or debtor for an order directing the discharge and cancellation of the judgment, any abstract . . . of said judgment, and the lien represented thereby.

Act of June 19, 1975, 64th Leg., R.S., ch. 396, § 1, 1975 Tex. Gen. Laws 1030, *repealed by* Act of 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3729, 3730.

Article 5449(a), Section 2, further provided that an order directing discharge and cancellation of a judgment, abstract, and lien would take effect in the county in which the abstract had been recorded only if a certified copy of the order was "recorded in the judgment lien records of [that] county." *Id*.

Article 5449(a), Section 5, however, provided an exception that if "the judgment was a lien on nonexempt real property owned by the bankrupt or debtor [before filing for bankruptcy]

---

[2] In his brief, the Trustee argues that because the statute is clear and unambiguous, the Court should not "consider legislative history or resort to other means to construe the statute." Without reviewing the legislative history, however, the statute appears to conflict with federal law. *See infra* n. 9 and accompanying text. The Court must therefore consider the Legislature's intent when it enacted the statute.

4

and said real property is abandoned during the course of the proceeding, the lien thereof upon said real estate shall not be affected by said order and may be enforced . . . ."[3] *Id*. at 1031.

The House Committee Report's Bill Analysis explained the background of the bill: "Most bankrupts are adversely affected when they attempt to sell their homestead and find that the sale cannot be consummated until any judgment liens are released of record." House Comm. on Judiciary, Bill Analysis, Tex. S.B. 755, 64th R.S. (1975).

The statute's legislative history instructs that the purpose of Article 5449(a) was to help enable a debtor, following bankruptcy, to sell a homestead that was burdened by liens in the county records. Although the statute's language applies to real property generally, not only to homesteads, the Court discerns no intent by the Texas Legislature to alter the operation of federal bankruptcy law.

In 1983, the Texas Legislature adopted the Texas Property Code as part of its recodification program; sections 52.021-.025 restated Article 5449(a) without substantive change. Act of 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3529, *amended by* Act of 1993, 73rd Leg., R.S., ch. 313, § 2, 1993 Tex. Gen. Laws 1400.

In 1993, the Legislature added Texas Property Code sections 52.042 and 52.043, which apply to judgment liens recorded on or after September 1, 1993 (and apply to the judgment lien at issue in this case). *See* TEX. PROP. CODE ANN. § 52.041 (West 2014). Section 52.042 states in relevant part:

> (a) A judgment is discharged and any abstract of judgment or judgment lien is canceled and released without further action in any court and may not be enforced if:

---

[3] While the Court need not interpret the meaning of the term "abandoned" to reach its conclusion in this case, it is unclear to the Court whether the Legislature used the term in reference to abandonment of the homestead under state law or abandonment by the trustee to the debtor under 11 U.S.C. § 554 (or the prior equivalent of § 554 under the Bankruptcy Act of 1898).

> (1) the lien is against real property owned by the debtor before a petition for debtor relief was filed under federal bankruptcy law; and
>
> (2) the debt or obligation evidenced by the judgment is discharged in the bankruptcy.

TEX. PROP. CODE ANN. § 52.042. Section 52.043 provides exceptions to discharge and cancellation:

> A judgment lien is not affected by [section 52.042] and may be enforced if the lien is against real property owned by the debtor before a petition for debtor relief was filed under federal bankruptcy law and:
>
> (1) the debt or obligation evidenced by the judgment is not discharged in bankruptcy; or
>
> (2) the property is not exempted in the bankruptcy and is abandoned during the bankruptcy.

TEX. PROP. CODE ANN. § 52.043.

The purpose of section 52.042 was to remove "the unnecessary requirement that a debtor go back to state court to eliminate a recorded abstract of the discharged judgment." House Comm. on Invs. & Banking, Bill Analysis, Tex. H.B. 1876, 73rd R.S. (March 30, 1993). Additionally, section 52.042 "would . . . allow automatic cancellation of judgments and judgment liens against debtors *following a bankruptcy action* . . . ." House Comm. on Invs. & Banking, House Research Organization Bill Analysis, Tex. H.B. 1876, 73rd R.S. (April 22, 1993) (emphasis added). In 1993, the statute's supporters reasoned:

> A debtor is required to go back to state court to attempt to remove prior recorded judgment liens that were placed on real property.
>
> This requirement severely limits the ability to sell real property that was retained by the debtor after bankruptcy. Title companies have difficulty in transferring good title to another purchaser when an abstract of judgment in the property records indicates that a lien remains on the property. [Section 52.042] would remove the unnecessary requirement that a debtor go to court to remove a recorded abstract of judgment when the debt already had been discharged by a federal bankruptcy action.

*Id.*

It appears to the Court that, as with the 1975 statute, the legislative intent in 1993 was not to affect lien rights in a bankruptcy case, but rather to help enable a *debtor*, following bankruptcy, to sell real property burdened by liens in the county records.[4] The Court therefore concludes that Texas Property Code sections 52.042-043 do not alter the rights of a judgment lienholder in a bankruptcy case. Further, even if, as the Trustee argues, the plain meaning of sections 52.042-.043 purported to transform a judgment lienholder into an unsecured creditor in a bankruptcy case, federal bankruptcy law would preclude such a result.

### C. Purpose and Process of the Bankruptcy Code

"Bankruptcy is both a creditor's remedy and a debtor's right." ***In re Marchiando***, 13 F.3d 1111, 1115 (7th Cir. 1994). While one purpose of bankruptcy law is to provide a fresh start for the honest but unfortunate debtor, another primary purpose is to provide for equitable treatment of creditors in recovery of their claims.[5] See ***Burlingham v. Crouse***, 228 U.S. 459, 473 (1913); ***Hanover Nat. Bank v. Moyses***, 186 U.S. 181, 192 (1902).

Federal bankruptcy law establishes that the date when the petition is filed is "the point of time which to separate the old situation from the new in the bankrupt's affairs . . . . [T]he law discloses a purpose 'to fix the line of cleavage' with special regard to the conditions existing when the petition is filed." ***White v. Stump***, 266 U.S. 310, 313 (1924) (quoting ***Everett v. Judson***, 228 U.S. 474, 479 (1913)). When the petition is filed, "the *status and rights* of the bankrupt [and] the creditors . . . are fixed." ***White***, 266 U.S. at 313 (emphasis added).

---

[4] The original goal of the statute was to allow a debtor to sell homestead property unencumbered by judicial liens following bankruptcy. If the Court accepted the Trustee's proposed meaning of the statute in this case, unsecured creditors would be the statute's beneficiaries, rather than the debtor.

[5] Indeed, bankruptcy law (as opposed to insolvency law) was originally exclusively a creditor's remedy, *see, e.g.,* ***Sturges v. Crowninshield***, 17 U.S. (4 Wheat.) 122, 194-95 (1819); and that persists as the law's primary purpose today. As one bankruptcy scholar has noted: "The primary justification for a bankruptcy law is not the fresh start, laudatory though that goal may be. Rather, the core function of bankruptcy is as a *collective creditors' remedy* that furthers the goals of efficiency and distributive justice." CHARLES JORDAN TABB, THE LAW OF BANKRUPTCY 4 (3d ed. 2014) (emphasis in original).

### 1. The automatic stay preserves the status quo as of the commencement of the case.

A debtor commences a voluntary bankruptcy case by filing a petition for relief under an applicable chapter of the Bankruptcy Code. 11 U.S.C. § 301. At that moment a bankruptcy estate is created under § 541, comprising all of the debtor's legal or equitable interests in property, and under § 362 the automatic stay operates as an injunction against any action "to recover a claim against the debtor that arose before the commencement of the case."

In an ideal world, the bankruptcy process would occur instantaneously with the filing of the petition and provide immediate relief for the debtor and all creditors. Because the bankruptcy process consumes time, the automatic stay is designed to preserve the status quo in order to "protect the debtor's assets, provide temporary relief from creditors, and further *equity of distribution* among the creditors by forestalling a race to the courthouse." ***GATX Aircraft Corp. v. M/V Courtney Leigh***, 768 F.2d 711, 716 (5th Cir. 1985) (emphasis added); *accord* ***Reliant Energy Servs., Inc. v. Enron Canada Corp.***, 349 F.3d 816, 825 (5th Cir. 2003). Additionally, the Fifth Circuit has recognized that the primary purpose of the automatic stay is to protect *creditors'* rights while the bankruptcy process—including determination of claims, resolution of contested matters and adversary proceedings, discharge of the debtor, and distribution of the estate—moves forward to its completion:[6]

> The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment. The stay of pre-petition proceedings enables the bankruptcy court to decide whether it will exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so, thereby preventing a

---

[6] Analogously, and in accord with the goal of preserving the status quo as of the commencement of the case, a debtor's right to exempt certain property is also frozen in time by the "snapshot rule," which "holds that all exemptions are determined at the time the bankruptcy petition is filed, and that they do not change due to subsequent events." ***Viegelahn v. Frost (In re Frost)***, 744 F.3d 384, 386 (5th Cir. 2014). Thus, when a debtor claims an exemption under state law, "it is the entire state law applicable on the filing date that is determinative." ***Zibman v. Tow (In re Zibman)***, 268 F.3d 298, 304 (5th Cir. 2001) (emphasis omitted).

8

> "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts."

*Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) (quoting *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 508 (7th Cir. 1982)); *see also Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) ("[The postponement of a proceeding against the debtor] effectuates the purposes of § 362(a)(1) by preserving the status quo until the bankruptcy process is completed or until the creditor obtains relief from the automatic stay.").

While the automatic stay preserves the status quo, secured creditors are also entitled to adequate protection so that they may recover on the value of their secured claim. *See* 11 U.S.C. § 361; CHARLES JORDAN TABB, THE LAW OF BANKRUPTCY 292 (3d ed. 2014) ("Adequate protection plays a central coordinating role in calibrating the treatment of secured creditors in bankruptcy cases, and the utilization of the creditor's collateral by the trustee or debtor in possession. In effect, it is the glue that holds together the multiple sections affecting the rights of a secured creditor."). Furthermore,

> An entity is entitled to adequate protection as a matter of right, not merely as a matter of discretion, when the entity is stayed from enforcing its interest, when the estate proposes to use, sell, or lease property in which the entity has an interest, and when the property on which the entity has a lien is to be used as collateral for a loan.

3 COLLIER ON BANKRUPTCY ¶ 361.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

In the legislative history of § 361, Congress also noted: "For the creditor, the [Bankruptcy Code] requires that once the secured claim is determined, the court must insure that the holder of the claim is adequately protected. The secured creditor is entitled to realize his claim, and not have his collateral eroded by delay or by use by the estate." H.R. REP. NO. 95-595, at 180-81 (1977).

9

In sum, the automatic stay protects a secured creditor's status and right to recover on the value of its claim, as of the commencement of the case. Here, before Buttery Company even filed a proof of claim in the case, it allegedly lost its rights as a secured creditor by intervention of the Texas Property Code.[7]

Allowing Texas law to instantly transform a creditor's status from secured to unsecured in the bankruptcy case, by way of the bankruptcy court's discharge order, would abrogate a secured creditor's rights under the Bankruptcy Code. The Court does not view this result in keeping with the equitable purpose or process of federal bankruptcy law.

### 2. Under the claims process, a secured creditor's rights relate back to the date when the petition was filed.

The claims process is central to the operation of the Bankruptcy Code. *See* 4 COLLIER ON BANKRUPTCY ¶ 502.01 ("The Bankruptcy Code is keyed to allowable claims. . . . Thus, the process of allowing and disallowing claims is an essential part of the bankruptcy process."). And fundamental to the distribution of the bankruptcy estate is that secured creditors recover on the amount of their allowed secured claims before the Trustee makes any distributions to unsecured creditors.[8] *See* 11 U.S.C. §§ 725-726; 1 COLLIER ON BANKRUPTCY ¶ 1.03[4].

---

[7] As exemplified in this case, it is possible that a discharge order is entered even before any proofs of claim are filed. In a voluntary Chapter 7 case, the § 341 meeting must be held no earlier than 21 days and no later than 40 days after the petition is filed. FED. R. BANKR. P. 2003(a). An objection "to discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)"; and, unless an exception applies, "on expiration of the times fixed for objecting to discharge and for filing a motion to dismiss the case under Rule 1017(e), the court shall forthwith grant the discharge . . . ." FED. R. BANKR. P. 4004(a), (c). And "a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code [unless an exception applies]." FED. R. BANKR. P. 3002(c). So in a Chapter 7 case, for example, while a discharge may occur 100 days after the petition is filed, it is also possible that a proof of claim is timely filed more than 100 days after the petition is filed.

[8] The Bankruptcy Code provides several mechanisms by which a secured creditor may recover on the value of its secured claim in a Chapter 7 case, such as: (1) relief from stay under § 362 and foreclosure by the secured creditor; (2) sale of the collateral under § 363 and distribution of proceeds to the secured creditor; (3) abandonment of collateral to the debtor under § 554 and foreclosure by the secured creditor; (4) redemption of the collateral under § 722 (only for personal property); and (5) reaffirmation of the debt with the secured creditor under § 524(c).

The claims process starts with 11 U.S.C. § 501, which allows a creditor to obtain a distribution from the estate by filing a proof of claim. *See, e.g.*, *In re 804 Cong., L.L.C.*, 529 B.R. 213, 217-18 (Bankr. W.D. Tex. 2015) (Davis, J.) (discussing the claims process, beginning with the filing of a proof of claim).

Under § 502(a), a proof of claim that "is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects." *See id.* at 218 ("'Deemed allowed' means that the holder of the claim will be able to 'receive distribution from the debtor's assets in a case or under a plan.'") (citing 4 COLLIER ON BANKRUPTCY ¶ 501.01[2][b]).

Then, "if such an objection is made, the court, after notice and a hearing, shall determine the amount of such claim . . . *as of the date of the filing of the petition*, and shall allow such claim in such amount [unless an enumerated exception applies]." 11 U.S.C. § 502(b) (emphasis added); *see also* 4 COLLIER ON BANKRUPTCY ¶ 502.03[1] (explaining the function and operation of § 502(b)). Thus, the date in time to determine whether the claim is allowed and the amount of the claim is "the date of the filing of the petition."

The Federal Rules of Bankruptcy Procedure prescribe no deadline for filing an objection to a claim. *United States v. Kolstad (In re Kolstad)*, 928 F.2d 171, 174 (5th Cir. 1991); *see also In re Presque Isle Apartments, L.P.*, 118 B.R. 331, 332 (Bankr. W.D. Pa. 1990) ("Bankruptcy Rule 3007 governs objections to claims. Rule 3007 provides no time limits for filing objections to claims. An objection against a claim in bankruptcy may be lodged at any time during the pendency of the case.").

Section 506 of the Bankruptcy Code then governs the determination of a creditor's secured status in the claims process: "An allowed claim of a creditor [pursuant to §§ 501-502] secured by a lien on property in which the estate has an interest . . . is a secured claim to the

11

extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a)(1). Accordingly, because § 506 applies to allowed claims—which are determined at the date of the filing of the petition—a creditor's secured status is also determined at the date of the filing of the petition.

Still, "[w]hat claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946). So while the nature, extent, and duration of a judicial lien are defined under state law, the *disposition* of judicial liens in bankruptcy is a matter of federal law: "The date of attachment of the judicial lien on the property of the debtor, as well as the nature, extent and validity of the lien, is to be determined by state law unless the application of state law would frustrate or debilitate federally enacted policy." *Cullen v. E.I. Dupont Denemours & Co. (In re Antinarelli Enters., Inc.)*, 49 B.R. 412, 414 (Bankr. D. Mass. 1985) (citing *Butner v. United States*, 440 U.S. 48, 54-57 (1979)).

Additionally, the priority of creditors' rights in a bankruptcy case is determined by federal bankruptcy law. *In re Southwestern Fabricators, Inc.,* 40 B.R. 790, 791 (Bankr. W.D. Tex. 1984) ("State law is determinative on the issue of entitlement to property rights while federal bankruptcy law is relevant on the issue of priorities of rights."). And "[t]o the extent that a state statute purports to establish the priority of a claim over other claims, that statute is pre-empted by the Code and of no effect in the bankruptcy case." 4 COLLIER ON BANKRUPTCY ¶ 507.02[3](a) (citing *Int'l Bhd. of Teamsters v. Kitty Hawk Int'l, Inc. (In re Kitty Hawk, Inc.)*, 255 B.R. 428, 439 (Bankr. N.D. Tex. 2000)).

A secured creditor's rights, as established under state law, therefore relate back to the date when the bankruptcy petition was filed, but state law cannot take away a creditor's secured status or otherwise alter the priority of its claim in a bankruptcy case. In addition, if the Texas Legislature had intended that sections 52.042-.043 alter the claims process or the priority of creditors' rights within a bankruptcy case, such sections would be preempted by federal bankruptcy law.[9]

### D. Prior Case Law

#### 1. *Moser v. Schachar*

Until the recent decision in *Moser v. Schachar*, No. 4:14-CV-185, 2015 WL 679689 (E.D. Tex. Feb. 17, 2015) (*appeal docketed*, No. 15-40321 (5th Cir. Mar. 6, 2015)), there were no published federal cases that addressed the effect of Texas Property Code sections 52.042-.043 in a bankruptcy case. The district court in *Moser* affirmed the bankruptcy court's judgment that the judgment lienholder (Schachar) remained a secured creditor following discharge in the bankruptcy case.[10] *Moser*, 2015 WL 679689, at *2-6.

While this Court agrees with the result in *Moser*, it follows a different rationale. In *Moser*, the court first noted that "a debt cannot be discharged and that 'only obligors and property may be discharged.'" *Id.* at *4. After discussing the meaning of "discharge" and the distinction between *in personam* and *in rem* liability following a bankruptcy discharge, the court "conclude[d] that section 52.042 is not in conflict with, and therefore not preempted by federal bankruptcy law." *Id.* at *3-4. The court then examined the statute's legislative history and

---

[9] *See* U.S. CONST. art. VI, cl. 2; *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 210-11 (1824); *see also Perez v. Campbell*, 402 U.S. 637, 652 (1971) ("[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.").

[10] In *Moser*, which is also a Chapter 7 case, Schachar filed a proof of claim for a secured claim of $400,566.17, which was perfected by an abstract of judgment recorded in the county property records. Also at issue in Moser was whether the real property was homestead, which is not an issue in this case.

13

concluded that "sections 52.041-.043 allow [the debtor's] *in rem* liability to be extinguished through an automatic discharge and cancellation of Schachar's lien[, but this] does not take effect . . . until *after* the bankruptcy proceeding." ***Id.*** at *6.

While terms such as "discharge," "debt," and "abandonment" are terms of art under federal bankruptcy law, this Court reaches its conclusion without interpreting or extrapolating the Texas Legislature's intended meaning of such terms. Rather, this Court examined the purpose of the statute and concludes that the Texas Legislature simply did not intend to alter the claims process or any other aspect of a bankruptcy case by enacting the original 1975 statute or 1993 amendments. At the same time, however, this Court concludes that the Texas Legislature did intend to provide relief for a debtor *outside* of a bankruptcy case.

### 2. *Megal Dev. Corp. v. Shadof*

At the hearing on the Motion for Summary Judgment, the Trustee argued that the Supreme Court of Wisconsin had held that a similar Wisconsin statute—Wis. Stat. § 806.19(4)—by its plain language, provided that a judgment lien was "satisfied" following discharge in bankruptcy, and the state statute was not preempted by federal bankruptcy law. *See **Megal Dev. Corp. v. Shadof***, 705 N.W. 2d 645, 657 (Wis. 2005); WIS. STAT. ANN. § 806.19(4) (West 2015).

A careful reading of ***Megal***, however, supports this Court's analysis and conclusion. After examining the Wisconsin Legislature's "policy choices" in enacting similar statutes, the court concluded that the Wisconsin statute was not preempted by federal law because the statute became effective *after* the bankruptcy:

> While Wis. Stat. § 806.19(4) is particular to the bankruptcy proceeding, in that it requires the discharge of judgments in bankruptcy before it can operate, it does not create an exemption. Nor does it limit the powers of the trustee during bankruptcy or operate to interfere in any way with the bankruptcy proceeding itself—it simply does not operate during bankruptcy. Section 806.19(4) is dormant until the conclusion of the federal bankruptcy proceeding, and, thus, it

> does not conflict with the Code. Therefore, neither *Kanter* nor *Cross* requires us to conclude that § 806.19(4) is preempted by federal law.

*Megal*, 705 N.W. 2d at 657.

Although this Court concludes that Texas Property Code sections 52.042-043 may operate *outside* of a bankruptcy case, not necessarily *after* a bankruptcy case is closed, the Supreme Court of Wisconsin's reasoning that the state statute does not "operate to interfere in any way with the bankruptcy proceeding" supports this Court's conclusion.

### III. Conclusion

This opinion does not decide the meaning or effect of Texas Property Code sections 52.042-.043 outside of a bankruptcy case.[11] After reviewing the legislative history, however, the Court concludes that sections 52.042-.043 do not alter the claims process or affect the rights of a secured creditor within a bankruptcy case.[12] Thus, unless Buttery Company's secured claim was defective in some way at the time Debtor filed the petition, Buttery Company maintains its allowed secured claim in the bankruptcy case.

The Court therefore DENIES Plaintiff's Motion for Summary Judgment.

###

---

[11] Importantly, the Court does not intend to frustrate the purpose of sections 52.042-.043 outside of the bankruptcy case, after the discharge order is entered, even though the case may not be closed.

[12] Because the Court concludes that sections 52.042-.043 do not conflict with the Bankruptcy Code, the Court need not conclude that such sections are preempted by federal law.